IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRANKLIN DAVIS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | No. 3:21-CV-2333-B-BN |
| ERIC GUERRERO, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

ORDER DENYING MOTION FOR LEAVE TO AMEND & DENYING PRO SE
MOTION TO WITHHOLD FEDERAL FUNDING
FOR PETITIONER'S COUNSEL

This is a capital habeas case challenging a sentence of death. The matters

before the Court are (1) Davis's pro se motion requesting the court to cut off funding

to his court-appointed federal habeas counsel, filed May 29, 2024 (ECF no. 104); (2)

Davis's motion requesting leave to file an amended petition, filed July 5, 2024 (ECF

no. 108); (3) Davis's motion requesting leave to file an amended petition of 150 pages,

filed July 5, 2024 (ECF no. 109); (4) Respondent's response in opposition to

amendment, filed July 25, 2024 (ECF no. 110); (5) Davis's reply regarding

amendment, filed August 19, 2024 (ECF no. 113); and (6) Davis's failure to comply

with this Court's Order issued June 4, 2024 (ECF no. 105) directing Davis's counsel

to respond to Davis's pro se motion to withhold funding.

## I. Background

Davis was convicted in November 2013 of fatally shooting, strangling, and

possibly drowning his family's teenage babysitter after she made accusations of sexual assault against Davis and criminal charges resulted. The undisputed evidence adduced at trial showed that, in the weeks leading up to the murder, Davis stalked his victim both physically and electronically, hacked her cell phone, recorded her telephone conversations with others, and tracked her to her high school before he shot her twice, forcibly strangled her, and left her body in a pond. Authorities charged Davis with capital murder, to wit, intentionally killing his victim while committing or attempting to commit the offense of "obstruction" of justice. (Davis's indictment appears at Volume 1 of the Clerk's Record from trial (henceforth "C.R.") at 44 [ECF no. 65-13, p. 44 of 348].) The victim had been listed in court documents as a potential witness against Davis in his criminal proceeding, which was approaching at the time of her murder.

At trial, law enforcement officers testified regarding Davis's confession to committing the murder, as well as his admissions that he had stalked his victim physically and electronically leading up to the murder. Davis also disclosed to detectives that he had surreptitiously recorded telephone conversations of his victim talking on her cell phone with others, during which Davis insisted she had made admissions that her accusations against him were false. Davis took the stand at the guilt-innocence phase of his capital murder trial and admitted that, after twice shooting his victim, he stomped on her neck with his foot, rolled her body into the pond, and left her to die. (Davis's testimony at the guilt-innocence phase of his trial appears in Volumes 64 and 65 of the court reporter's verbatim transcription of trial

(henceforth "R.R."), specifically at 64 R.R. [ECF no. 67-24] 135-246 and 65 R.R. [ECF no. 67-25] 19-184.)  The jury convicted Davis of capital murder and answered the Texas capital sentencing special issues favorably to the prosecution.

The Texas Court of Criminal Appeals' opinion affirming Davis's conviction and death sentence contains a lengthy and detailed summary of the evidence presented at Davis's capital murder trial.  *Davis v. State*, AP-77,031, 2016 WL 6520209, *1-11 (Tex. Crim. App. Nov. 2, 2016).

On direct appeal, the TCCA denied all of Davis's points of error, concluding in part that (1) there was sufficient evidence to support his conviction and the jury's affirmative answer at the punishment phase to the future dangerousness special issues; (2) the prosecution did not improperly use peremptory challenges in an invidiously discriminatory manner in violation of the holding in *Batson v. Kentucky*; (3) the trial court did not err in excluding the defense's proffered audio recordings of the telephone conversations of Davis's victim and others which Davis recorded surreptitiously after he hacked her cell phone; (4) the prosecution did not engage in improper jury argument; and (5)  there was no error in the punishment phase jury instructions.

The Texas Court of Criminal Appeals subsequently denied Davis's initial application for state habeas corpus relief.  *Ex parte Davis*, WR-84,065-01, 2021 WL 4186452 (Tex. Crim. App. Sept. 15, 2021).

## II. Proceedings in this Court

Davis filed his original federal habeas petition in this court on September 1,

2022 (ECF no. 33) arguing therein that (1) his trial counsel rendered ineffective assistance at the punishment phase of Davis's capital murder trial by failing to adequately investigate Davis's background and develop and present all available mitigating evidence at the punishment phase of Davis's capital murder trial; (2) the prosecution struck three members of the jury venire for discriminatory reasons in violation of the holding in *Batson v. Kentucky*; (3) the trial court erred in denying Davis's motion for continuance (or, alternatively, his trial counsel rendered ineffective assistance in failing to adequately litigate the motion for continuance); (4) the trial court erred in excluding evidence proffered by the defense, , specifically audio recordings of conversations between Davis's victim and others which Davis intercepted and recorded after he hacked his victim's cell phone (which recordings Davis contends show that his victim fabricated her claims that Davis sexually assaulted her); (5) the trial court erred in issuing faulty jury instructions regarding future dangerousness at the punishment phase of trial; and (6) he is entitled to federal habeas relief under the concept of "cumulative error" even if none of his previous claims are meritorious "due to the cumulative effective [sic] of the errors occurring at trial, including the cumulative effect of counsel's deficient performance."

Davis's fifth claim inn his original petition appears to be an attack on the constitutionality of the Texas capital sentencing statute's future dangerousness special issue. Davis argues that the trial court erred when it refused to instruct the jury (as requested by the defense) that the term "criminal acts of violence," as used in the future dangerousness special issue, means "serious criminal activity causing

serious bodily injury or death, not trivial accidental, or reckless, or highly provoke acts." Davis also argues the trial court erred when it refused his request to instruct the jury that (1) "criminal acts of violence" does not include mere property crimes not combined with serious bodily injury and (2) future dangerousness means more than a hypothetical threat. The legal premise underlying all these arguments is that the Texas capital sentencing special issues are required to narrow the category of capital offenders who are eligible to receive the death penalty (ECF no. 33, at 116-17).

Respondent filed his response to Davis's petition on March 13, 2023 (ECF no. 64), arguing in part (1) the state habeas court reasonably denied Davis's initial ineffective assistance complaint because Davis's trial counsel reasonably chose not to present evidence about Davis's traumatic background which reinforced the notion that Davis posed a threat of future dangerousness; (2) Davis's alternative assertion of ineffective assistance arising from his trial counsel's alleged used of a racial epithet was unexhausted; (3) the TCCA reasonably denied Davis's *Batson* claims on the merits on direct appeal and the state habeas court reasonably denied all of Davis's ineffective assistance claims; (4) the state trial court reasonably denied Davis's due process claim arising from the denial of his motion for continuance and Davis's alternative ineffective assistance claim is unexhausted; (5) the TCCA held on direct appeal that the trial correctly excluded Davis's proffered audio recordings of his victim discussing her sexual assault claims against Davis; and (6) there had been no cumulative error.

Respondent spent considerable time and energy obtaining all of the state court

records relevant to Davis's claims in this federal habeas action, filing most of the relevant state court records in March, April, and July 2023 (ECF nos. 65-68, 71, 77-78). Respondent finally filed the last of the relevant state court records, which included a number of voluminous sealed exhibits from Davis's state habeas corpus proceeding, on January 5, 2024 (ECF no. 87).

### III. Motion for Leave to Amend

On July 5, 2024, Davis filed an opposed motion seeking leave to amend his petition to add a new claim of ineffective assistance by his trial counsel in connection with the guilt-innocence phase of his trial (ECF No. 108). Davis also simultaneously filed a motion requesting permission to file a 150-page amended petition (ECF no. 109). Davis attached this proposed amended petition to his motion for leave to file (ECF no. 108-1).

Davis's proposed amended petition includes a greatly expanded factual recitation about his background and his trial counsel's investigation for mitigating evidence (ECF no. 108-1, at 8-88), designed apparently to further support his complaint of ineffective assistance at the punishment phase of his trial. Davis's proposed amended petition also asserts a completely new and unexhausted federal habeas claim in which he argues *for the first time* that (1) his trial counsel fundamentally misunderstood applicable law and, as a result, employed an unreasonable trial strategy at the guilt-innocence phase of trial; (2) Davis's counsel unreasonably construed the applicable "obstruction" statute as including a *mens rea* element which it did not; (3) as a result, Davis's guilt-innocence phase strategy was

to admit that Davis had killed his victim but then argue Davis did so not because she was going to testify against him at his sexual assault trial but, rather, because Davis sincerely believed his victim's accusation against him had ruined his life, *i.e.*, as an act of vengeance unrelated to his victim's status as a potential witness against him; (4) his trial counsel unreasonably made their challenge to the obstruction charge the central theme of the defense's questioning of venire members during voir dire; (5) Davis's trial counsel erroneously argued that there was a difference under Texas law between the offenses of "obstruction" and "retaliation" in the relevant provisions of applicable state law when, in fact, no "meaningful" difference exists; (6) adopting the foregoing trial strategy, which had no basis in applicable law, was deficient performance within the meaning of *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984); (7) Davis's trial counsel unreasonably chose *not* to present testimony at the guilt-innocence phase of trial showing that, at the time Davis killed his victim, he was remembering or experiencing flashbacks to his own sexual assault as a child by his grandfather and brother; and (8) Davis's trial counsel's decision not to present evidence during the guilt-innocence phase of trial addressing Davis's history of traumatic events during his childhood harmed and diminished the case in mitigation actually presented during the punishment phase of his capital murder trial (ECF no. 108-1, at 89-102). Davis requested leave to file his proposed amended petition.

On July 25, 2024, Respondent filed his response in opposition to Davis's motion for leave to amend, arguing that (1) granting Davis's motion would result in undue delay and prejudice the respondent; (2) all of the information contained in the last

batch of state court records filed in this court to which Davis pointed in his motion for leave to amend (as the bases for his new guilt-innocence-phase ineffective assistance claim) was readily apparent from (a) the state trial court record (to which, obviously, Davis's federal habeas counsel had access prior to the filing of Davis's original federal habeas petition); (b) the portions of the state habeas court records that were filed by Respondent in mid-2023 (to which Davis's federal habeas counsel had access to prior to filing Davis's original petition); or (c) unsealed documents which had been available to, or actually in the possession of, Davis's federal habeas counsel for years *prior* to the filing of Davis's original petition; and (3) any amendment at this juncture to add Davis's new guilt-innocence-phase ineffective assistance claim would be futile because (a) the proposed new claim does not relate back to any of the claims included in Davis's original petition, citing *Mayle v. Felix*, 545 U.S. 644, 664 (2005), and (b) Davis's new ineffective assistance claim would necessarily be barred from review by the AEDPA's one-year statute of limitations (ECF no. 110).

On August 19, 2024, Davis filed a reply brief in which he argued that (1) without access to the sealed records which were not filed in this court until January 2024, Davis could not have fully developed his new claim of ineffective assistance at the guilt-innocence phase of his trial; (2) his new guilt-innocence phase ineffective assistance claim relates back to his original petition because both his proposed new claim and his claim of punishment-phase ineffective assistance in his original petition arise from a "common core of operative facts" – that is, both claims are assertions that his trial counsel were so discombobulated by their unreasonable guilt-innocence trial

8

strategy that they neglected to conduct a reasonable investigation for mitigating evidence or to front-load available potentially mitigating evidence (about Davis's own history as a victim of child sexual abuse) during Davis's guilt-innocence phase trial testimony; and (3) the State will not be prejudiced if required to address the merits of Davis's new guilt-innocence-phase ineffective assistance claim (ECF no.113).

## IV. Analysis of Motion for Leave to Amend

### A. The Factors for Consideration

The Supreme Court has explained the standard for granting or denying a motion for leave to amend in a federal habeas corpus proceeding as follows:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962). The Supreme Court also cautioned federal courts against summary denials of motions for leave to amend. *Id.*

Thus, in determining whether to grant leave to amend a federal habeas petition, a district court may consider whether (1) the petitioner unduly delayed raising the claim; (2) the request for leave to amend resulted from bad faith or a dilatory motive; (3) the petitioner had been given previous opportunities to cure deficiencies which he had failed to exercise; (4) the respondent would suffer undue

prejudice; and (5) an amendment would be futile. *Flores v. Stephens*, 794 F.3d 494, 504 (5th Cir. 2015) (citing *Jones v. Robinson Prop. Grp., L.P.,* 427 F.3d 987, 994 (5th Cir.2005)). It is unnecessary for this court to address the second, third, and fourth of the foregoing factors because, as explained below, analysis of the first and last factors compels denial of Davis's motion for leave to amend.

## B. Undue Delay in Presenting the New Claim

The new guilt-innocence-phase ineffective assistance claim included as the first claim in Davis's proposed amended petition was readily discernable to Davis and his federal habeas counsel long before the filing of Davis's original petition herein, much less the filing of the latest batch of previously sealed exhibits from Davis's state habeas proceeding. As is evident from even a cursory review of Davis's proposed amended petition, the guilt-innocence strategy of Davis's trial counsel was made crystal clear throughout Davis's state trial court proceedings.

Davis's proposed new ineffective assistance claim is based on allegations of allegedly unreasonable arguments and unreasonable voir dire examination questions employed by his trial counsel prior to the start of trial on the merits (ECF no. 108-1, at 89-102). The first subheading under this proposed new ineffective assistance claim reads as follows: "As early as jury selection, the defense team made a challenge to 'obstruction' the centerpiece of trial strategy." (ECF no. 108-1, at 89).

In his proposed amended petition Davis quotes at length from the testimony of his former lead state trial counsel given during the evidentiary hearing in Davis's state habeas proceeding. There is no suggestion that Davis's federal habeas counsel

10

lacked access prior to the filing of Davis's original petition to either (1) the record from Davis's trial (including voir dire proceedings) or (2) the record of *sworn testimony* given by Davis's trial counsel during Davis's initial state habeas proceeding.  Thus, the guilt-innocence strategy of Davis's trial counsel was clear and subject to scrutiny by Davis's federal habeas counsel long before they filed Davis's original federal habeas petition.  Any strategic flaws in the guilt-innocence phase trial strategy of Davis's trial counsel identified by Davis in his new proposed ineffective assistance claim could, and should have been, recognized by his federal habeas counsel long before the date Davis filed his original petition.  There is no fact-specific allegation in Davis's proposed amended petition suggesting that the strategy employed by his defense team at trial was in any manner undiscernible from review of the trial record.

And all the legal authorities citied by Davis in his proposed amended petition's discussion of why he believes his trial counsel's guilt-innocence phase trial strategy was objectively unreasonable predate the filing of Davis's original petition in this court by many years.  (*see* ECF no. 108-1, at 91-95)  Long before Respondent filed the last batch of sealed records in this court, Davis's federal habeas counsel should have been able to discern from a review of the trial record and state habeas record any fundamental flaws in the trial strategy employed by Davis's trial counsel at either phase of Davis's capital murder trial.

Under such circumstances, Davis unreasonably and unduly delayed the filing of Davis's motion for leave to amend and proposed amended federal habeas petition.  If Davis now wishes to take issue with the trial strategy of his counsel employed

during voir dire and at the guilt-innocence phase of trial, that discontent could and should have been included in Davis's original federal habeas petition.

And, as explained in detail below, the new first claim in Davis's amended petition does *not* allege any specific facts showing that the allegedly deficient performance of Davis's trial counsel affected the outcome of the guilt-innocence phase of Davis's capital murder trial. Instead, the proposed new claim focuses entirely on asserting how the deficient performance of Davis's trial counsel impacted the outcome of the punishment phase of Davis's trial.

The proposed new claim alleges no facts showing how anything Davis's trial counsel did or failed to do had any real-world impact on the outcome of the guilt-innocence phase of his trial. Davis's proposed amended petition, therefore, appears to an attempt to assert new factual and new legal theories in support of his otherwise exhausted claim of ineffective assistance in connection with the punishment phase of his capital murder trial, a claim Davis fully litigated in his initial state habeas proceeding.

## C. Futility

Even without determining whether Davis's proposed new ineffective assistance claim is either procedurally barred from federal habeas review or barred by the AEDPA's one-year statute of limitations, allowing an amendment to add this new guilt-innocence phase ineffective assistance claim would be an act of futility. Davis's proposed new guilt-innocence-phase ineffective assistance claim is wholly conclusory.

Rule 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts requires that the petition "state the facts supporting each ground." This is very different from the "notice pleading" requirement of Rule 8, Fed. R. Civ. P. *See Murphy v. Dretke*, 416 F.3d 427, 436-38 (5th Cir. 2005) (holding generic reference to individual voir dire of entire jury venire insufficient to support a *Batson* claim (citing *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (conclusory allegations fail to establish a valid claim of ineffective assistance of counsel)); and *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (conclusory allegations do not raise a constitutional issue in a habeas proceeding).

The Fifth Circuit has reaffirmed this rule in a wide variety of contexts. *See, e.g., Fahle v. Cornyn*, 231 F.3d 193, 196-97 (5th Cir. 2000) (conclusory due process allegations that petitioner was denied the presumption of innocence insufficient to support claims for federal habeas relief); *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) (conclusory assertions regarding alleged destruction of exculpatory evidence failed to show State destroyed the evidence in bad faith, i.e., with knowledge of its exculpatory value); *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996) ("A habeas petitioner must make specific allegations; 'conclusory allegations unsupported by specific facts' or 'contentions that in the face of the record are wholly incredible' will not entitle one to discovery or a hearing." (quoting *Blackledge v. Allison,* 431 U.S. 63, 74 (1977))).

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of trial counsel, as guaranteed by the Sixth

Amendment, was announced by the Supreme Court in *Strickland*, 466 U.S. at 687:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

To satisfy the first prong of *Strickland*, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). In so doing, a convicted defendant has the burden of proof and must overcome a strong presumption that the conduct of his trial counsel "falls within [a] wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Bobby*, 558 U.S. at 7 (quoting *Strickland*, 466 U.S. at 688-89). Under the well-settled *Strickland* standard, the Supreme Court recognizes a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See Wiggins*, 539 U.S. at 523; *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Strickland*, 466 U.S. at 690.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his

counsel, the result of the proceeding would have been different. *Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Thornell v. Jones*, 602 U.S. 154, 163 (2024); *Strickland*, 466 U.S. at 694. "This requires a substantial, not just conceivable, likelihood of a different result." *Jones*, 602 U.S. at 163; *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

Insofar as Davis contends that his trial counsel's conduct throughout his capital murder trial was objectively unreasonable as defined by *Strickland* and that deficient performance "prejudiced" him within the meaning of *Strickland* at *the* punishment phase of trial, resolution of that question must await this court's analysis of the first claim contained in Davis's original petition. That is not the claim Davis proposes to add to this federal habeas proceeding, however. Instead, Davis now seeks to add a claim that his trial counsel's objectively unreasonable conduct prejudiced Davis within the meaning of *Strickland* at the guilt-innocence phase of trial.

And, so, to prevail on such a claim, Davis must allege, with the specificity required by Rule 2(c)(2), and prove facts which demonstrate that, but for the deficient performance of his trial counsel the outcome of the guilt-innocence phase of his capital murder trial would have been any different.

But, as explained below, Davis alleges no specific facts in his proposed amended petition sufficient to establish a reasonable probability that, but for the allegedly deficient guilt-innocence phase strategy of his trial counsel (and the conduct undertaken by said counsel in furtherance of that allegedly deficient strategy), the

15

outcome of the guilt-innocence phase of Davis's capital murder trial would have been any different.

"To establish prejudice under *Strickland*, a defendant must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Flores v. Lumpkin*, 74 F.4th 678, 683 (5th Cir. 2023) (quoting *Strickland*, 466 U.S. at 694).

In *United States v. Cronic*, 466 U.S. 648 (1984), decided the same day as *Strickland*, the Supreme Court held a presumption of prejudice similar to that recognized in *Cuyler v. Sullivan*, 446 U.S. 335, 348–50 (1980), arises in three narrow circumstances: first, when a criminal defendant is completely denied the assistance of counsel; second, when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and finally, where the circumstances are such that even competent counsel very likely could not render effective assistance. *Cronic*, 466 U.S. at 659. As examples of the latter two situations, respectively, the Supreme Court cited the denial of effective cross-examination in *Davis v. Alaska*, 415 U.S. 308, 318 (1974) (defendant was denied the opportunity to cross-examine the prosecution's key witness for bias), and the incendiary circumstances surrounding the trial of the so-called "Scottsboro Boys" addressed in *Powell v. Alabama*, 287 U.S. 45 (1932) (no individual attorney was appointed to represent the defendants and trial proceeded after a volunteer attorney from another state appeared on the first day of trial but confessed he had not had an opportunity to prepare for trial). *Cronic*, 466 U.S. at 659-61. In a footnote, the Supreme Court recognized the continuing efficacy of its earlier

16

holding in *Cuyler*, presuming prejudice where a defendant establishes an actual conflict of interest adversely affected his counsel's performance. *Cronic*, 466 U.S. at 661 n.31.

And, so, prejudice is presumed only in the narrow class of cases where a "defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Bostick v. Quarterman*, 580 F.3d 303, 306 (5th Cir. 2009) (quoting *Strickland,* 466 U.S. at 692 (in turn citing *Cuyler,* 446 U.S. at 348-50)). "The Supreme Court has not expanded *Cuyler*'s presumed prejudice standard beyond cases involving multiple representation." *Beets v. Scott*, 65 F.3d 1258, 1265 & n.8 (5th Cir. 1995).

And, the Fifth Circuit has never applied the presumed prejudice rule of *Cuyler* outside of the context of multiple representations cases, *i.e.*, situations in which counsel previously or simultaneously represented multiple defendants with adverse interests. *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000) (citing *Beets*); *see also See United States v. Gentry*, 941 F.3d 767, 776 (5th Cir. 2019) (explaining that where a defendant alleges an ineffective assistance of counsel claim that does not relate to multiple representations, the holding in *Strickland* applies: a defendant must demonstrate that the (1) conflict causes counsel to perform deficiently and (2) deficiency prejudiced the defendant's case).

Davis alleges no specific facts in his proposed amended petition showing that a conflict of interest like the one recognized in *Cuyler* applies in his case. To succeed on a conflict of interest claim under *Cuyler*, a defendant must demonstrate that his

counsel labored under "an actual conflict of interest that adversely affected his performance at trial." *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005). This is a fact-intensive inquiry. *See Infante*, 404 F.3d at 392. "An 'actual conflict' exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo*, 205 F.3d at 781. An "[a]dverse effect may be established with evidence that some plausible alternative defense strategy or tactic could have been pursued, but was not because of the actual conflict impairing counsel's performance." *Id.* (internal quotation marks and citation omitted).

No presumption of prejudice arises only because trial counsel chose a questionable strategy. *Thomas v. Davis*, 968 F.3d 352, 355-56 (5th Cir. 2020) (defendant still required to prove prejudice under *Strickland* where trial counsel admitted the strength of the prosecution's evidence in closing guilt-innocence phase jury argument as part of a strategy to maintain credibility with the jury).

Insofar as Davis suggests or implies in his proposed amended petition that his trial counsel's fixation of an unreasonable definition of "obstruction" under Texas law deprived Davis of a defense at the guilt-innocence phase of trial, that assertion does not entitle Davis to a presumption of prejudice. *Thomas*, 968 F.3d at 356.

And Davis alleges no specific facts showing there was any defense available to him at the guilt-innocence phase of his trial. For instance, Davis does not allege any specific facts showing that, but for the unreasonable strategy of his trial counsel, Davis could have asserted a potentially viable defense of insanity, as defined under

applicable Texas law.  And Davis does not allege any specific facts showing that any other affirmative defense recognized under Texas law was reasonably available to him at the guilt-innocence phase of trial, but for the deficient performance of his trial counsel.

"[T]he Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." *Cronic*, 466 U.S. at 656 n.19.

And no Supreme Court case has applied *Cronic* to overturn a conviction solely because of counsel's alleged trial errors. In *Bell v. Cone*, 535 U.S. 685 (2002), for instance, the Court contrasted *Strickland* and *Cronic,* noting that those cases had been decided on the same day and that *Cronic* applied only when counsel's failure to mount a meaningful defense was "complete." *Bell*, 535 U.S. at 697.

Davis's proposed amended petition does not allege any specific facts showing that he was "completely" denied a meaningful defense at the guilt-innocence phase of his capital murder trial by his trial counsel's unreasonable interpretation of applicable Texas law.

On the contrary, the gist of the argument Davis presents in his proposed new guilt-innocence-phase ineffective assistance claim is that his trial counsel was deficient for asserting a defense to his capital murder charge when none was reasonably available.  Davis argues his counsel's deficient performance at the guilt-innocence phase of trial prejudiced Davis when his case moved to the punishment

phase of his trial.  As explained above, whether that is the case remains to be seen. What is clear at this juncture, however, is that Davis has alleged no specific facts showing a reasonable probability of a different outcome at the *guilt-innocence phase* of his capital murder trial, but for the deficient performance of his trial counsel.

This conclusion is reinforced by the TCCA's opinion on direct appeal, which furnishes a compelling summary of the evidence the prosecution presented at the guilt-innocence phase of Davis's capital murder trial.  The evidence at the guilt-innocence phase of Davis's trial established that, after being taken into custody and given his *Miranda* warnings, Davis initially denied that he had any involvement in the murder.  Later, Davis asked to speak with a detective, Davis indicated to officers he still remembered the warnings he had previously been given, and the following took place:

> Davis told the officers that he and Gray got out of the car at the park and started walking down a trail. He said that he was "trying to tell her how much she had fucked up [his] whole life with the lies that she told." He said they walked off the trail, and he pulled the gun out. He shot Gray, but he was not sure where he had hit her. She fell into the water. He said Gray lay in the water for a second, "trying to act like she was dead." He shot her again. He said she cried and said, "[W]hy Wish?" He said he threw her jacket down to her to get her out of the water. He explained: "I wanted to stop but ... I felt like if I would have stopped she would have told what had happened .... So I told her to lay [sic] down on the grass. And she laid [sic] down on the grass .... I put my foot on her neck and I pressed down." Davis said Gray grabbed his leg for about three seconds, then let go. He said, "I asked her to forgive me." He then rolled her body into the water and left the park. He said he drove out of the parking lot and then pulled back in because he wanted to go to help her, but he knew it was too late. He told the detectives that he was sorry for what he had done.

*Davis*, 2016 WL 6520209, *4.  Davis alleges no facts showing that, but for the

20

allegedly unreasonable strategy of his trial counsel, there is a reasonable probability the foregoing testimony reflecting his confession would have been excluded from evidence or that any other evidence establishing a potentially viable defense could have been developed and presented at the guilt-innocence phase of trial.

Davis does not allege any specific facts in his proposed amended petition suggesting that, but for his trial counsel's unreasonable trial strategy, Davis would have pleaded guilty to his capital murder charge and sought a reduced sentence. The Supreme Court explained in *Hill v. Lockhart,* 474 U.S. 52, 59 (1985), that in the plea context, the "prejudice" prong of the *Strickland* test for ineffective assistance of counsel requires that the defendant show "that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." The Fifth Circuit has recognized the same principle. *United States v. Kayode*, 777 F.3d 719, 724 (5th Cir. 2014 (quoting *Hill*); *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (same).

Where there is overwhelming evidence of guilt, a defendant's claim of ineffective assistance arising in the context of a guilty plea fails to satisfy the prejudice prong of *Strickland* because there is no reasonable probability that, but for deficient performance by trial counsel, the defendant would have insisted on proceeding to trial on the merits. *Young v. Spinner*, 873 F.3d 282, 287-88 (5th Cir. 2017); *Kayode*, 777 F.3d at 726 (holding no *Strickland* prejudice shown in relation to guilty plea where evidence of guilt was overwhelming and there was a lack of a viable defense).

Nor does Davis allege any specific facts showing that, but for his trial counsel's unreasonable strategy, prosecutors would have been willing to offer Davis a plea bargain in which Davis received a sentence of life without parole (or less) in exchange for a guilty plea.

After the prosecution rested at the guilt-innocence phase of Davis's capital murder trial, Davis took the stand and testified, in pertinent part, as described by the TCCA, as follows:

> Davis further testified that he took Gray to Sam Houston Trail Park. He ordered Gray to delete the text message exchanges with "D" and then turn her phone off, and she complied. They sat in the car for a while and he berated her for having a happy life. Davis said he was thinking of how he was raped by both his grandfather and his brother and how his youngest daughter had holes in her shoes because he could not provide for her. He told Gray to leave her phone in the car and made her walk down the slope toward the river, and then he shot her. He was aiming for her head. She fell into the water, and then he shot her again. He walked down the slope to make sure she was dead. She asked, "Why, Wish[?]" and told him that the right side of her body was going numb. He threw her the end of her jacket and pulled her out of the water, injuring his tricep muscle in the process. He told her to lie down, then he stepped on her neck and held his foot there. She briefly reached up and touched his ankle and then her hand fell. He rolled her into the water and then he left.

*Davis*, 2016 WL 6520209, *9. Davis alleges no specific facts showing that, but for his trial counsel's unreasonable trial strategy, he would have chosen not to testify at the guilt-innocence phase of his trial.

It was undisputed at trial that Davis was well aware his victim would be the prosecution's key witness against him at his forthcoming sexual assault trial. Davis admitted during his own testimony that fact was what motivated him to stalk his victim for weeks prior to her murder.

And, so, there was overwhelming evidence of Davis's guilt on the capital murder charge against him presented by *both* parties at the guilt-innocence phase of his capital murder trial. Davis, thus, alleges no specific facts in his proposed amended petition sufficient to establish *Strickland* prejudice in support of his proposed new guilt-innocence-phase ineffective assistance claim. *Ramey v. Lumpkin*, 7 F.4th 271, 282-84 (5th Cir. 2021) (holding no prejudice under *Strickland* where evidence of the defendant's guilt unaffected by the alleged deficient performance of his trial counsel was overwhelming); *Sanchez v. Davis*, 936 F.3d 300, 306 (5th Cir. 2019) (holding no prejudice under *Strickland* at guilt-innocence phase of trial where the prosecution presented four eyewitnesses to the murder, including members of Sanchez's own family); *Norris v. Davis*, 826 F.3d 821, 835 (5th Cir. 2016) (where there was overwhelming evidence of guilt, defendant could not establish prejudice under *Strickland* in connection with guilt-innocence phase of trial); *Paredes v. Thaler*, 617 F.3d 315, 327 (5th Cir. 2010) (no prejudice under *Strickland* based on complaint of trial counsel's failure to object to allegedly erroneous guilt-innocence phase jury instructions where evidence of the defendant's criminal responsibility for the murders under the Texas law of parties was overwhelming).

Given the detectives' testimony and Davis's own testimony that Davis knew his victim was going to testify against him in his then-forthcoming sexual assault case and Davis's admission that he intentionally killed her, allowing amendment of his federal habeas petition to add this new claim of guilt-innocence-phase ineffective assistance would truly be an exercise in futility.

### D. Conclusions

Davis's motion for leave to amend must be denied because Davis unduly delayed in asserting his new guilt-innocence-phase ineffective assistance claim. The factual bases underlying that proposed new claim should have been apparent to Davis's federal habeas counsel long before they filed Davis's original petition. There was no justifiable reason to delay asserting such a claim until after the last of the sealed state court records (mostly exhibits from Davis's state habeas proceeding) were filed in this court. The facts supporting this new proposed claim were evident from review of the portions of the state trial court and state habeas records to which Davis's federal habeas counsel had access prior to filing Davis's original petition in this court. The legal bases for this proposed new claim were also readily available prior to the filing of Davis's original petition.

And it would be futile to allow an amendment at this juncture to permit Davis to assert his proposed new conclusory guilt-innocence-phase ineffective assistance claim because Davis has failed to allege any specific facts sufficient to show a reasonable probability of a different outcome at the guilt-innocence phase of his trial but for the unreasonable strategy of his trial counsel.

Davis's motion for leave to amend must be denied.

### IV. Pro Se Motion to De-Fund Federal Habeas Counsel

On May 29, 2024, Davis filed a pro se motion asking this court to halt all payments to his federal habeas counsel until said counsel complied with several demands Davis has made of them (ECF no. 104).

More specifically, Davis complained that (1) his federal habeas counsel have failed to file a claim for federal habeas relief in this proceeding based upon the failure of the Texas Office of Capital and Forensic Writs ("OCFW") to furnish Davis with effective assistance during the course of Davis's initial state habeas corpus proceeding (specifically for failing to adequately investigate Davis's case); (2) his federal habeas counsel have consistently refused to listen to the seven recordings of telephone conversations which Davis states he recorded from the cell phone of his victim after Davis hacked her cell phone (which recordings Davis alleges are in the custody of law enforcement authorities and available for inspection by said counsel); (3) his federal habeas counsel have refused to attempt to locate or make contact with an individual whom Davis identifies as a potential witness at his trial but with whom his trial counsel were unable to make contact prior to trial, resulting in Davis's trial counsel choosing not to call that individual to testify for the defense; and (4) his federal habeas counsel have shown little interest in investigating this failure by his trial counsel as a potential ground for federal habeas relief.

Davis's latest wave of pro se complaints with his federal habeas counsel is best viewed within the context of this entire proceeding. On November 14, 2022, Davis filed a pro se motion requesting substitution of counsel based on what he described as "major issues" with his federal habeas counsel, specifically said counsel's (1) failure to file unspecified "things" with this court; (2) failure to furnish Davis with copies of unidentified "legal documents"; (3) failure to do a proper investigation of his case; and (4) request that Davis waive any conflict of interest arising from having a former

OCFW attorney work as federal co-counsel on his federal habeas case. After directing Davis's federal habeas counsel to respond to Davis's pro se motion for substitution of counsel (ECF no. 38) and reviewing same (ECF no. 39), this court denied Davis's pro se motion in an Order issued December 6, 2022 (ECF no. 40).

On December 12, 2022, Davis filed another pro se motion (ECF no. 44) which this court struck on December 14, 2022 as an unauthorized, improper, ex parte communication (ECF no. 45).

On January 20, 2023, Davis filed four new pro se motions (ECF nos. 46-49), requesting (1) a hearing before the court to resolve his on-going complaints about the refusal of his federal habeas counsel to (a) file a complaint against Davis's state habeas counsel (OCFW) and (b) furnish Davis with copies of certain photographs which Davis alleged were stored in the cell phones in his possession at the time of his arrest (which cell phones are presently in the custody of law enforcement authorities); (2) substitution of new counsel in this proceeding based upon a controversy which took place during Davis's last visit with his current co-counsel at Davis's TDCJ facility; (3) to be physically present at any future hearing in this cause; and (4) to drop all his current appeals. This court again directed Davis's federal habeas counsel to respond to Davis's wave of pro se motions (ECF no. 50). While Davis's federal habeas counsel were requesting authorization for travel to visit Davis again (ECF nos. 52 & 55), Davis filed yet another motion seeking to withdraw his federal appeal (ECF no. 54). This court authorized the additional travel expenditures (ECF nos. 53 & 56-58). Subsequently, Davis's federal habeas counsel filed a response to all of

Davis's then-pending pro se motions (ECF nos. 59 & 61) and this court dismissed same as moot (ECF no. 60).

On May 1, 2024, Davis filed another pro se motion requesting that one of his three federal habeas counsel be dismissed (ECF no. 93). This court once again authorized additional travel expenses to permit Davis's federal habeas counsel to personally visit Davis (ECF no. 96). After Davis's federal habeas counsel filed a motion requesting that Davis's pro se request for removal of one of his federal counsel be withdrawn (ECF no. 102), this court denied Davis's pro se motion to dismiss one of his three federal habeas counsel (ECF no. 103).

At that point, Davis filed the pro se motion that still pending as of this date (ECF no. 104).

Insofar as Davis demands in his latest pro se filing that his federal habeas counsel file a claim in this proceeding asserting ineffective assistance by Davis's former state habeas counsel (OCFW), Davis's request is not merely legally frivolous. 28 U.S.C. Section 2254(i) expressly provides as follows: "The ineffectiveness or incompetence of counsel during Federal or State collateral postconviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."

And it has long been recognized in this Circuit that infirmities in state post-conviction proceedings, including ineffective assistance by state habeas counsel, do not furnish a basis for federal habeas relief. *See, e.g., In re* Palacios, 58 F.4th 189, 190 (5th Cir. 2023) (state attorney who opposed defendant's state habeas application also prepared the state habeas trial court's findings of fact and conclusions of law);

*Rockwell v. Davis*, 853 F.3d 758, 761 n.5 (5th Cir. 2017) (state habeas court allegedly failed to adhere to Texas criminal procedural laws); *Tercero v. Stephens*, 738 F.3d 141, 147 (5th Cir. 2013) (state habeas court failed to hold an evidentiary hearing on petitioner's *Roper* claim); *In re Gentras*, 666 F.3d 910, 911 (5th Cir. 2012) (state appellate court allegedly used flawed procedures to review state petitions for post-conviction review); *Stevens v. Epps*, 618 F.3d 489, 502 (5th Cir. 2010) (allegedly inadequate funding and staffing of the Mississippi Office of Capital Post-Conviction Counsel); *Haynes v. Quarterman*, 526 F.3d 189, 195 (5th Cir. 2008) (alleged ineffective assistance by initial state habeas counsel); *Brown v. Dretke*, 419 F.3d 365, 378 (5th Cir. 2005) (state habeas judge who issued findings of fact was not the same judge who presided over the petitioner's state habeas hearing); *Elizalde v. Dretke*, 362 F.3d 323, 331 (5th Cir. 2004) (recognizing that Supreme Court precedent does not recognize a general right to effective assistance in a state post-conviction proceeding); *Henderson v. Cockrell*, 333 F.3d 592, 606 (5th Cir. 2003) (state habeas court held that an alleged violation of a petitioner's state statutory right to effective representation in an initial state habeas proceeding did not furnish a basis for relief in a subsequent state habeas proceeding); *Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir. 2001) (petitioner denied access to the prosecution's file during state habeas corpus proceeding); *Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2001) (state habeas court allegedly overburdened petitioner's state habeas counsel by assigning multiple state habeas cases to the same counsel at the same time); *Wheat v. Johnson*, 238 F.3d 357, 361 (5th Cir. 2001) (state habeas court's refusal to consider a supplemental state writ

application); *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (state habeas court adopted the prosecution's proposed findings of fact and conclusions of law only three hours after they were filed with the state court); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) (state court policy against considering challenges to prison disciplinary proceedings in state habeas corpus proceedings); *Nichols v. Scott*, 69 F.3d 1255, 1275 n.36 (5th Cir. 1995) (state habeas judge had been the prosecutor in one of the petitioner's prior convictions that was introduced into evidence at the punishment phase of petitioner's capital murder trial, state habeas judge failed to recuse himself *sua sponte*, and state habeas judge signed prosecution's proposed findings and conclusions without change); *McCowin v. Scott*, 67 F.3d 100, 102 (5th Cir. 1995) (petitioner proceeded *pro se* and without a copy of the transcript in his state habeas proceeding and state habeas court failed to hold an evidentiary hearing); *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992) (state habeas court quashed subpoenas *duces tecum* served on County District Attorney, State Attorney General, and U.S. Marshal).

This court explained several years ago that Rule 11 of the Federal Rules of Civil Procedure provides in pertinent part that an attorney filing a litigation document (including a federal habeas corpus petition) certifies that the document (1) is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation and (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

*Williams v. Lumpkin*, 339 F.R.D. 383, 386 (N.D. Tex. 2021) (citing *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016)). There are three ways a pleading can offend Rule 11: inadequate legal support; inadequate factual support; and improper purpose. *Williams*, 339 F.R.D. at 386 (citing *American Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 529 (5th Cir. 1992)). Sanctions are appropriate under Rule 11 when a signatory to a pleading or motion fails to conduct a reasonable inquiry into the law and facts underlying his pleading or motion or if the pleading or motion signed was intended to delay, harass, or increase the cost of litigation. *Williams*, 339 F.R.D. at 386 (citing *Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999)).

Davis identifies no legitimate basis for asserting a claim in this federal habeas cause "against" (or premised upon the alleged ineffective assistance of) his former state habeas counsel (OCFW). And Davis has failed to identify a nonfrivolous argument for extending federal habeas law to include such a claim. And, so, asserting the claim repeatedly urged by Davis in his many pro se filings in this court (including his latest screed) would in all reasonable likelihood violate Rule 11 and subject counsel signing a pleading containing such a claim to a panoply of sanctions so severe they asymptotically approach the severity of the sentence ultimately facing Davis.

Davis's federal habeas counsel are ethically obligated to investigate, present, and litigate claims for federal habeas relief on Davis's behalf in this court within the mandates of Rule 11. Davis's court-appointed federal habeas counsel are not obligated to seek the return of Davis's allegedly wrongfully retained personal

property from local law enforcement agencies.  All relief requested in Davis's latest pro se motion (ECF no. 104) will be denied with prejudice.

## V. Conclusion

The Court, for the reasons explained above, (1) denies all relief requested in Davis's motion for leave to file an amended petition (ECF no. 108); (2) denies all relief requested in Davis's pro se motion seeking to halt funding for his federal habeas counsel (ECF no. 104); and (3) denies as moot Davis's motion requesting permission to file an amended petition of 150 pages (ECF no. 109).

SO ORDERED.

DATED: March 20, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE